United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEALED,<br><br>            Plaintiff,<br><br>     v.<br><br>SEALED,<br><br>            Defendant. | Case No. 16-cv-02259-EMC<br>*SEALED*<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE APPLICATION FOR ENTRY OF TRO AND SEIZURE ORDER, ETC.; AND GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES**<br><br>Docket Nos. 4, 12 |

Currently pending before the Court is Plaintiff's ex parte application for entry of a temporary restraining order ("TRO") and seizure order; order restraining the transfer of assets; order to show cause why a preliminary injunction should not issue; order appointing substitute custodian; and order temporarily sealing the file. Having considered the papers submitted, and good cause appearing therefor, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiff's request for relief.

### I. DISCUSSION

A.   Ex Parte Relief

As an initial matter, the Court finds that the ex parte nature of the proceedings is appropriate. *See* 15 U.S.C. § 1116(d)(4)(B) (instructing court to evaluate whether "an order other than an ex parte seizure order is not adequate to achieve the purposes of section 32 of this Act [15 U.S.C. § 1114]"); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (recognizing that ex parte orders are proper where "'notice of the defendant would render fruitless the further prosecution of the action'"; adding that a plaintiff "'must show that [the] defendant[]

would have disregarded a direct court and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history'"). Plaintiff has provided evidence indicating that Defendant is violating both an injunction issued by another judge in this District, *see generally* Hahn Sisbarro Decl. ¶¶ 11-14, and an order issued by a state court in a criminal proceeding. *See generally* Hahn Sisbarro Decl., Ex. 2. Given that situation, Defendant has a strong incentive to dispose of evidence and/or otherwise not cooperate. *See also* Gaffigan Decl. ¶ 12 (discussing his experience that "voluntary compliance with preservation and production orders by companies and individuals participating in counterfeiting activities [is] almost non-existent, even when the defendants are otherwise engaged in legitimate business").

B.  Seizure Order

The Court also finds that a seizure order as provided for by 15 U.S.C. § 1116(d) is proper.

- Plaintiff has given notice of its application for relief to the U.S. Attorney in this District. *See* Gaffigan Decl., Ex. 1.
- As indicated above, an order other than an ex parte seizure order is not adequate to achieve the purposes of § 1114.
- In addition, Plaintiff has not publicized the requested seizure.
- Plaintiff is likely to succeed in showing that Defendant used a counterfeit mark. The declarations submitted by Plaintiff indicate that Defendant is selling counterfeit products bearing Plaintiff's mark(s). *See generally* Hahn Sisbarro Decl.; Pollock Decl.; Silva Decl.; Castillo Decl.
- Plaintiff will suffer an immediate and irreparable injury if seizure is not ordered, particularly in light of the fact that Defendant has not been deterred from selling counterfeit products even after previously being sued in a civil lawsuit and prosecuted in a criminal action.
- The items to be seized will be located at the Burlingame address identified in the application. Defendant's agents successfully purchased counterfeit products at that

2

1    address.[1]

2  - The harm to Plaintiff if the application were denied outweighs the harm to Defendant if the
3    application were granted, particularly because the seizure order would simply prevent
4    Defendant from selling what appear to be counterfeit goods. Defendant may suffer some
5    harm from "down time" caused by the seizure and/or or from its inability to access records.
6    However, that harm is still outweighed by the harm to Plaintiff if no seizure order were
7    issued.

8  - Defendant has a strong incentive to dispose of evidence if Plaintiffs were to give notice of
9    its request for relief given the prior civil and criminal lawsuits.

10   Accordingly, the Court hereby orders as follows:

11   1. Service of a copy of this order shall be made by a federal law enforcement officer (such as
12      a U.S. marshal) or may be made by a state or local law enforcement officer who, upon
13      making service, shall carry out the seizure under the order.[2] The law enforcement
14      officer(s) shall also advise Defendant at the time of seizure that this order contains
15      information about a scheduled hearing before the Court.

16   2. The following location is subject to the seizure order: Hsiao Yin Fu (a/k/a Nicky Fu, Nicky
17      Hsiao Yin Fu, Hsiao Yinfu, Nicki Hsiao, and/or Peer Fu), d/b/a Nicky's or Nicky's
18      European Fashion, 1419 Burlingame Avenue, Suites C and D, Burlingame, California.

19   3. The law enforcement officer(s) shall size only the following: (a) counterfeit products and
20      packaging bearing Plaintiff's mark(s) (*i.e.*, the Chanel Marks (see Exhibit A)) or any other
21      mark substantially indistinguishable from that mark; (b) the means of making such marks,
22      and/or (c) records (including electronic) documenting the manufacturer, sale, or receipt of
23      such products.

---

[1] In their proposed order, Plaintiffs suggested that the seizure should also be carried out at "unknown business locations operated by the Defendant." Prop. Order ¶ L. The Court finds that such a description does not comport with the spirit of 15 U.S.C. § 1116(d)(5) (providing that there must be "a description of each place at which such matter is to be seized"). Should Plaintiffs, in the future, identify additional locations, they may seek relief on an expedited basis.
[2] The Court rejects Plaintiff's contention that an off-duty law enforcement may carry out the seizure. *See World Wrestling Entm't, Inc. v. Doe*, No. 15-cv-01263-VC, 2015 U.S. Dist. LEXIS 46561, a *1-5 (N.D. Cal. Mar. 24, 2015) (rejecting "off duty" language proposed by applicant).

3

4.  One attorney representing Plaintiff may be present for the seizure, as well as one Plaintiff's representative. The attorney and representative shall not participate in the seizure in any way, except that law enforcement may consult with them to determine whether a product is counterfeit or genuine.

5.  Plaintiff may hire one person to videotape the seizure. That person shall not participate in the seizure in any way, except for videotaping.

6.  Law enforcement shall inventory all items seized prior to giving custody of the seized items to Plaintiff's counsel. *See* ¶ 7 *infra*.

7.  All materials seized shall be taken into the custody of Plaintiff's counsel, who is hereby designated a substitute custodian acting on behalf of the Court. Plaintiff and Plaintiff's counsel are precluded from reviewing or examining items seized until Defendant consents or the Court permits such review or examination. Plaintiff's counsel, however, shall immediately copy all original records and return them to Defendant as soon as possible but in no event later than three court days after seizure. *See Chanel, Inc. v. Conklin Fashions, Inc.*, No. 3:15-CV-893 (MAD/DEP), 2015 U.S. Dist. LEXIS 109886, at *6 (N.D.N.Y. Aug. 14, 2015) (ordering that originals be copied and returned to defendant as soon as possible but in no event later than three court days after seizure).

8.  The seizure shall take place no later than seven days after the date of this order.

9.  Plaintiff shall provide security to the Court in an amount no less than $20,000.[3]

10. **A hearing shall be held on May 13, 2016, at 11:00 a.m.** At that hearing, Plaintiff shall have the burden "to prove that the facts supporting findings of fact and conclusions of law necessary to support such order are still in effect." 15 U.S.C. § 1116(d)(10)(A). If Plaintiff fails to meet that burden, the seizure order shall be dissolved or modified appropriately.

///

---

[3] Plaintiff proposed an undertaking of only $10,000. However, it is likely that the goods to be seized will exceed $10,000 in value, particularly as Plaintiff's investigators viewed only items actually on display.

4

C.  TRO

The Court's findings above also support issuance of a TRO. The terms of the TRO are as follows.[4]

Defendant and her officers, agents, servants, employees, and attorneys, as well as other persons in active concert or participation with Defendant or any such person listed above, are hereby temporarily restrained from the following:

1. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products, product packaging, or labeling bearing the Chanel Marks (see Exhibit A), or any confusingly similar mark, other than those actually manufactured and distributed by Plaintiff.

2. Until ten (10) days from the date of seizure, from communicating, directly or indirectly, with any person or persons: (a) from whom Defendant purchased or obtained products bearing the Chanel Marks; (b) to whom Defendant sold or offered to sell these products; or (c) whom Defendant knows or reasonably believes to possess, control, or have access to have any of these products.

3. Until ten (10) days from the date of the seizure, from otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiff's application for this order, except for Defendant's attorney.

4. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of:
   (a) any products or product packaging not manufactured or distributed by Plaintiff bearing

---

[4] At this juncture, the Court shall not order the freezing of assets or seizing of any cash. As Plaintiff notes, the Court has the "inherent power to freeze [Defendant's] assets in order to ensure the availability of . . . final relief," *i.e.*, "an effective accounting of [Defendant's] profits and the return of profits [illegally] obtained." *Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 559-60 (9th Cir. 1992). But "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *see also Reebok*, 970 F.2d at 563 (taking note of district court's finding that defendant "'may hide [its] allegedly ill-gotten funds' if [its] assets are not frozen"). The evidence submitted by Plaintiff to support the asset freeze is thin – *i.e.*, facts indicating that Defendant does not charge sales tax when paid in cash. *See, e.g.*, Silva Decl. ¶ 3. Notably, Defendant does appear to engage in credit card transactions, for which sales tax is charged. *See, e.g.*, Castillo Decl. ¶ 3. The Court also notes that Plaintiff has not offered evidence to suggest that Defendant does not engage in any legitimate business; thus, the proposed asset freeze would likely pose a significant hardship to Defendant.

the Chanel Marks, or any confusingly similar mark; or (b) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products or product packaging bearing the Chanel Marks.

5. Knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs 1 through 4 above.

In addition, the Court orders the following relief with respect to a third party (1) who is a limited custodian of documents and other evidence that (a) belongs to Defendant or that (b) is in Defendant's possession, custody, or control or (2) who is a custodian with responsibility for maintaining records on behalf of Defendant.  Any such third party, being served with a copy of this order, shall preserve any and all records (including electronic) in its possession, custody, or control that are connected with Defendant's use of the Chanel Marks at issue in this matter. Within five (5) days from receipt, the third party shall provide Plaintiff's counsel with a sworn affidavit confirming compliance with this order.

**A hearing shall be held on May 13, 2016, at 11:00 a.m.**, as to whether Plaintiff is entitled to a preliminary injunction with terms similar to the terms of the TRO above.

**This order shall be sealed until Defendant has an opportunity to contest this order.**

This order disposes of Docket Nos. 4 and 12.[5]

**IT IS SO ORDERED**.

Dated: May 3, 2016

_____
EDWARD M. CHEN
United States District Judge

---

[5] Plaintiff's motion to file excess pages is granted.  Plaintiff is advised, however, that the motion could easily have been briefed within the page limitations provided for in the Civil Local Rules. Requests for excess pages may not be accommodated in the future without good cause.

# EXHIBIT A

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 18 - Women's handbags |
| CHANEL | 1,733,051 | November 17, 1992 | IC 18 - Leather goods; namely, handbags, wallets, travel bags, luggage, business and credit card cases, change purses, tote bags, cosmetic bags sold empty, and garment bags for travel |
| ⊃⊂ (CC monogram) | 1,734,822 | November 24, 1992 | IC 18 - Leather goods; namely, handbags, wallets, travel bags, luggage, business card cases, change purses, tote bags, and cosmetic bags sold empty |
| ⊃⊂ (CC monogram) | 3,025,934 | December 13, 2005 | IC 18 – Handbags |