UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HSIAO YIN FU, <br><br> Defendant. | Case No. 16-cv-02259-EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Docket No. 61 |

## I.  INTRODUCTION

Plaintiff Chanel, Inc. has filed suit against Defendant Hsiao Yin Fu for: (1) counterfeiting, (2) trademark infringement, (3) false designation of origin, (4) trademark dilution, (5) state and common law trademark infringement and unfair competition, and (6) breach of contract. Previously, defense counsel informed the Court that Ms. Fu did not intend to respond to Chanel's complaint; accordingly, the Court instructed the Clerk of the Court to enter Ms. Fu's default. *See* Docket No. 59 (minutes); Docket No. 60 (notice of entry of default). Chanel has now filed a motion for a default judgment. Ms. Fu has failed to oppose the motion. Having considered Chanel's papers and accompanying submissions, as well as all other evidence of record, the Court hereby **GRANTS** the motion for default judgment and awards the relief identified below.

## II.  BACKGROUND

Chanel's complaint and evidence submitted in support of the motion for default judgment reflect as follows.

Chanel is a company engaged in the business of manufacturing and distributing a variety of high quality goods such as handbags, wallets, clothing, and jewelry. It has multiple federally registered trademarks, including the Chanel word mark and a monogram of interlocking C's

(collectively, "Chanel marks"). *See* FAC ¶¶ 2, 7.

Ms. Fu operates a business in Burlingame, California, where she has sold and continues to sell counterfeit products that infringe on the Chanel marks. *See* FAC ¶¶ 3-4, 16. These products include handbags, wallets, clothing, and jewelry. *See id.* ¶ 16. The quality of the counterfeit products sold by Ms. Fu is substantially different from the quality of Chanel's genuine goods. *See id.* ¶ 17.

Prior to this action, Chanel filed a lawsuit against Ms. Fu in March 2014 for, *inter alia*, trademark counterfeiting and infringement. *See Chanel, Inc. v. Fu*, No. C-14-1088 YGR (N.D. Cal.). The parties settled that case, and a consent final judgment and permanent injunction in favor of Chanel were entered in December 2014. However, in spite of that judgment and permanent injunction, which, *inter alia*, enjoined Ms. Fu from selling counterfeit and infringing products bearing the Chanel marks, Ms. Fu continued to sell such products.

For example, in July 2015, December 2015, and March 2016, investigators working on behalf of Chanel purchased counterfeit and infringing handbags and wallets from Ms. Fu. *See* Docket No. 8 (Pollock Decl. ¶¶ 2-7); Docket No. 9 (Silva Decl. ¶¶ 2-5); Docket No. 10 (Castillo Decl. ¶¶ 2-6); *see also* Docket No. 7 (Sisbarro Decl. ¶¶ 11-16) (confirming that products purchased were nongenuine, counterfeit products). Accordingly, Chanel initiated the instant action in April 2016.

In May 2016, this Court granted in part and denied in part Chanel's motion for a temporary restraining order and seizure order. *See generally* Docket No. 23 (order). The TRO barred Ms. Fu from selling counterfeit and infringing products. The seizure order allowed law enforcement to seize counterfeit and infringing products that fell within the scope of the trademarks identified by Chanel in its complaint.

On May 4, 2016, law enforcement seized goods on Chanel's behalf from Ms. Fu's store in Burlingame. *See* Docket No. 31 (custody receipt for seized property and evidence). The seizure exceeded the scope of the Court's order. *See* Docket No. 35 (Order at 4). Before the Court learned of this fact, Ms. Fu consented to a preliminary injunction and the seizure that was effected. *See* Docket No. 35 (order). The Court subsequently acknowledged Ms. Fu's consent but, because

one of Chanel's attorneys, Stephen Gaffigan, had not acted properly in connection with the seizure, the Court revoked his pro hac vice status and ordered Chanel to provide an additional undertaking to cover the items seized that were beyond the scope of the seizure order. *See* Docket No. 37 (order).

In September 2016, the parties stipulated to private ADR to attempt to resolve their dispute. *See* Docket No. 49 (stipulation and order). But just a few months later, in November 2016, Chanel informed the Court that it was not able to schedule a mediation because Ms. Fu was not cooperating. *See* Docket No. 55 (notice). A month later, Chanel moved for entry of default against Ms. Fu based on her failure to respond to the complaint. The Court then held a telephonic conference where defense counsel stated to the Court that Ms. Fu did not intend to respond to Chanel's complaint. The Court thus instructed the Clerk of the Court to enter Ms. Fu's default, *see* Docket No. 59 (minutes); Docket No. 60 (notice of entry of default), and Chanel has now moved for a default judgment.

### III.   DISCUSSION

A.   Service of Process

In general, when a court is presented with a motion for default judgment, it first "assess[es] the adequacy of the service of process on the party against whom default is requested." *Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-95-1240 MHP, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001); *see also DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 877 (N.D. Cal. 2012) (affirming that a district court must determine that service of process against the party who default is requested is adequate). This is to ensure that the defendant's failure to appear and defend was not because the summons and complaint had not been properly served in the first instance.

In the instant case, Ms. Fu has never contested service of process and has had an attorney represent her in the proceedings. Under these circumstances, the Court does not have any concern that Ms. Fu's default was based on a failure to understand that a lawsuit was being brought against her, and therefore moves on to the merits of Chanel's motion for default judgment. *See* Fed. R. Civ. P. 4 (e)(1) (allowing service to be effected pursuant to California state law); Cal. Civ. Proc.

1 Code 415.20 (providing for substitute service). Moreover, as a facial matter, substitute service

2 appears sufficient. *See* Docket No. 31 (service on employee); Docket No. 34 (service my mail).

3 B.    *Eitel* Factors

4 "[A] district court's decision whether to enter a default judgment is a discretionary one."

5 *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in

6 exercising that discretion include:

7    (1) the possibility of prejudice to the plaintiff, (2) the merits of
     plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
8    the sum of money at stake in the action; (5) the possibility of a
     dispute concerning material facts; (6) whether the default was due to
9    excusable neglect, and (7) the strong policy underlying the Federal
     Rules of Civil Procedure favoring decisions on the merits.
10

11 *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In assessing these factors, a court abides

12 by "[t]he general rule of law . . . that upon default the factual allegations of the complaint, except

13 those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*,

14 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks omitted).

15 The majority of the above factors weigh in favor of default judgment. For example, here,

16 Chanel will suffer prejudice if the Court does not enter default judgment because Chanel would

17 not be able to recover for the harm inflicted by Ms. Fu – in particular, that resulting from her

18 continued infringement of the Chanel marks even after a prior consent final judgment and

19 permanent injunction. *See Yelp, Inc. v. Catron*, 70 F. Supp. 3d 1082, 1094 (N.D. Cal. 2014);

20 *Phillip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Also,

21 because Ms. Fu has not filed an answer to the complaint, and because Ms. Fu has expressed that

22 she no longer has an interest in participating in this litigation, there is nothing to suggest that there

23 is a possibility of a dispute concerning material facts. Further, there is no indication that Ms. Fu's

24 default was due to excusable neglect. Finally, the preference for deciding on the merits does not

25 preclude the Court from entering default judgment against Ms. Fu because she failed to defend

26 this action.

27 The only factors that deserve closer analysis are the second and third factors – *i.e.*, the

28 merits of the Chanel's substantive claim and the sufficiency of the complaint. Generally, courts

1  consider the merits of plaintiff's substantive claims and the sufficiency of the complaint together.
2  *See Catron*, 70 F. Supp. at 1094; *see also IO Grp., Inc. v. Jordan*, 708 F. Supp. 2d 989, 997-1000
3  (N.D. Cal. 2010). In the instant case, Chanel has alleged six causes of action: (1) trademark
4  counterfeiting, (2) trademark infringement, (3) false designation of origin, (4) trademark dilution,
5  (5) state and common law trademark infringement and unfair competition, and (6) breach of
6  contract. *See* FAC ¶¶ 26-65. However, for purposes of this opinion, the Court need only consider
7  the claim for trademark infringement. This is because Chanel's claims for trademark
8  counterfeiting, false designation of origin, and state and common law trademark infringement and
9  unfair competition essentially apply the same standard as the claim for trademark infringement.[1]
10 *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir.1988) (holding that the
11 applicable test for trademark counterfeiting and trademark infringement is essentially the same);
12 *Brookfield Comm'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 n. 8 (9th Cir. 1999)
13 (determining that the test for false designation of origin under 15 U.S.C. § 1125(a) is the same as
14 the test for trademark infringement under 15 U.S.C. § 1114); *Cleary v. News Corp.*, 30 F.3d 1255,
15 1262-63 (9th Cir. 1994) (finding that the test for common law trademark infringement and unfair
16 competition, pursuant to the California Business and Professions Code, is the same test as that
17 used for trademark infringement). Moreover, the relief sought by Chanel in the pending motion is
18 all available if it prevails on its claim for trademark infringement.
19      For a plaintiff to prevail on a trademark infringement claim, it must show that there is "(1)
20 a valid, protectable trademark, and (2) that . . . use of the mark is likely to cause confusion."
21 *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Likelihood of
22 confusion may be established by "'post-purchase confusion,' i.e., confusion on the part of
23 someone other than the purchaser who, for example, simply sees the item after it has been
24 purchased." *Karl Storz Endoscopy Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 854 (9th Cir.

---

[1] Chanel has also asserted claims for trademark dilution and breach of contract. However, the trademark dilution claim should not differ significantly from the trademark infringement claim, *see Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008), and Chanel no longer seeks relief for the breach-of-contract claim. *See* Supp. Br. at 5-6 (stating that Chanel no longer seeks relief for Ms. Fu's alleged violation of the consent final judgment and preliminary injunction entered by Judge Gonzalez Rogers in No. C-14-1088 YGR).

2002). *See e.g., Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 821 (9th Cir. 1980) (finding that there was likelihood of confusion because the nongenuine good was "likely to cause confusion or mistake or to deceive the public as to the source of association").

Here, taking the well-pled allegations of the complaint as true, Chanel has met both of these requirements. First, Chanel has alleged that it holds valid and protectable trademarks that are registered with the United States Patent and Trademark Office. *See* FAC ¶ 7 (providing registration numbers for nine marks). Second, Chanel has alleged that the Chanel marks "have never been assigned or licensed to any of the Defendants." *Id.* ¶ 9. Third, Chanel has alleged that Ms. Fu has sold counterfeit products that use the same Chanel marks (both the Chanel word mark and the interlocking C's) and that are of inferior quality. *See id.* ¶¶ 16-17. (Chanel has also submitted declarations confirming purchases of nongenuine products from Ms. Fu, with the products purchased bearing the Chanel mark or marks. *See* Docket No. 63-1 (Vafaeisefat Decl.).) Finally, there is a likelihood of confusion because, even if purchasers of Ms. Fu's counterfeit products know that they are being purchasing nongenuine goods, the larger public likely would not have the same understanding.

Accordingly, Chanel has adequately pleaded a claim for trademark infringement, and therefore the *Eitel* factors weigh in favor of a default judgment.

C. <u>Requested Relief</u>

Where the Court finds a default judgment appropriate, it must still evaluate whether the specific relief requested by Chanel is proper.

As reflected in its opening brief, Chanel initially asked this Court for the following: (1) a permanent injunction, (2) statutory damages amounting to $500,000, (3) unspecified attorneys' fees, (4) costs amounting to $400, (5) a release of the bond posted by Chanel ($40,000), (6) a finding that Ms. Fu is in contempt of the permanent injunction entered by Judge Gonzalez Rogers (in No. C-14-1088 YGR); and (7) an order allowing Chanel to destroy the goods that were seized from Ms. Fu on May 4, 2016. *See* Mot. at 9-15.

However, after the Court asked for supplemental briefing, in particular, on the relief requested by Chanel, Chanel significantly scaled back on the requested relief. As reflected in its

6

supplemental brief, Chanel no longer asks for statutory damages or a contempt finding. Now, Chanel seeks only (1) a permanent injunction, (2) attorney's fees amounting to $35,640, (3) costs amounting to $400, (4) a bond release, and (5) permission to destroy the seized goods.

1. Permanent Injunction

Where a plaintiff successfully establishes trademark infringement, *see* 15 U.S.C. § 1114, a permanent injunction to prevent such infringement from continuing is possible relief. Title 15 U.S.C. § 1116(a) provides that a court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark."[2] 15 U.S.C.A. § 1116(a).

A permanent injunction requires a plaintiff to show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

These factors support a permanent injunction in the instant case. Chanel has established that it has suffered an irreparable injury for which damages are inadequate as compensation. Ms. Fu has infringed and has continued to infringe even after entering into a consent final injunction and permanent injunction in Judge Gonzalez Rogers's case. *See Sandlin*, 846 F.2d at 1180 (indicating that, when a defendant continues to engage in trademark infringement, there is no other "adequate remedy at law"). As for the balance of hardships, that tips strongly in Chanel's favor because Ms. Fu has does not have a cognizable hardship if she is simply unable to sell counterfeit, infringing goods. Finally, the public interest weighs in favor of a permanent injunction because an injunction would both protect Chanel's intellectual property rights and would protect the public from counterfeit goods. Accordingly, a permanent injunction is appropriate.

As for the terms of the permanent injunction, the Court finds the language proposed by Chanel appropriate, with one exception. As noted at the hearing, the Court finds problematic the

---

[2] Section 17203 of the California Business and Professional Code also provides for injunctive relief when a party engages in unfair competition. *See* Cal. Bus. & Prof. Code § 17203.

7

language proposed by Chanel barring Ms. Fu from using any "*layout* which may be calculated to falsely advertise the services of products Defendant offered for sale." Docket No. 61-3 (proposed order) (emphasis added). Because Chanel stated, at the hearing, that it would be amenable to dropping the term "layout" from the permanent injunction (presumably, because this action concerns Ms. Fu's sale of infringing goods, and not infringement of the layout of a Chanel store), the Court does not include the term "layout" in the permanent injunction provided for below.

### 2. Attorney's Fees

#### a. Exceptional Case

In its opening brief, Chanel initially asked for attorney's fees in conjunction with statutory damages. After the Court asked Chanel to provide supplemental briefing on whether attorney's fees may be awarded under 15 U.S.C. § 1117(c) (the provision that allows for statutory damages), or at least where a plaintiff has also requested statutory damages, Chanel amended its request for relief. More specifically, Chanel stated that it no longer seeks statutory damages and requests only attorney's fees. Thus, implicitly, Chanel is now asking to be awarded attorney's fees under 15 U.S.C. § 1117(a) only (*i.e.*, § 1117(c) is no longer implicated at all).[3]

Under Section 1117(a), a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In the context of trademark infringement, a case is exceptional when a "defendant acted maliciously, fraudulently, deliberately, or willfully." *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (citing *Stephen W. Boney, Inc. v. Boney Serv., Inc.*, 127 F.3d 821, 825-26 (9th Cir.1997)). A defendant acts willfully if the defendant knowingly and intentionally infringed the plaintiff's trademark rights. *See Earthquake Sound Corp.*, 352 F.3d at 1216.

Here, the instant case clearly qualifies as an exceptional one. There is little doubt that Ms.

---

[3] Because Chanel's FAC indicated that a fee request was being made pursuant to § 1117(a), the Court may fairly consider this request for relief. *See* Fed. R. Civ. P. 54 (c) (stating that "a default judgment must not differ in kind from . . . what is demanded in the pleadings"); *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (finding that the relief requested in the default judgment was the same as in the complaint).

Fu knowingly and intentionally infringed Chanel's marks given that she previously consented to a final judgment and permanent injunction in Judge Gonzalez Rogers's case but, nevertheless, continued to sell counterfeit, infringing goods. An award of attorney's fees is therefore warranted; the only issue is what amount of fees should be awarded.

          b.      <u>Amount of fees</u>

Chanel seeks attorney's fees in the amount of $35,640. This amount is based on certain hourly rates charged by Chanel's attorneys/legal assistants and the number of hours expended on the litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.").

Based on the evidence presented, the Court finds the requested hourly rates reasonable given counsel's experience and qualification. *See Fallay v. S.F. City & Cty.*, No. C-08-2261-CRB, 2016 WL 879632, at *6 (N.D. Cal. Mar. 8, 2016) (stating that courts are to look at customary rates charged for work performed in the relevant legal community, the attorneys' reputation and experience, the quality of services, complexity of the work performed, and the results); *see also* Keller Decl. ¶ 10 (noting that partners charged $325-$500 per hour, the associate $325 per hour, and the paralegal $125 per hour).

As for the number of hours expended, the Court also finds Chanel's request for 100.4 hours reasonable. Chanel represents that its attorneys have exercised sounds billing judgment, and the Court's own review of the billing records – as well as Chanel's representations regarding those records at the hearing on the motion – supports such. *See* Docket No. 63-2 (Keller Decl. ¶ 9) (stating that counsel is requesting only those "legal fees that were reasonably incurred by Chanel in connection with the preparation of the complaint, the TRO and seizure order, the first amended complaint, case management, including attempts to schedule mediation with the defendant's attorney, the case management conferences, the preparation of the request to enter default and the preparation of the motion for entry of default judgment"; adding that deductions were made for "any time related to the seizure of Defendant's counterfeit goods and preparing and responding to the court's request . . . for an explanation why certain items were seized" and time spent

9

1  "addressing the issues raised by the Court in the supplemental brief except for the request for
2  attorneys' fees"). Additionally, Chanel has excluded, from its fee request, all hours incurred by
3  Mr. Gaffigan (the attorney who went outside the seizure order and whose pro hac vice status was
4  revoked as a result). *See id*.

Because the hourly rates requested are reasonable, as are the number of hours given the litigation tasks performed by Chanel's counsel, the Court grants the total fee award requested – *i.e.*, $35,640.

### 3. Costs

As for costs, Chanel asks for an award in the amount of $400, which represents the initial filing fee charged by the Court. *See* Keller Decl. ¶ 15. This cost is appropriate to charge against Ms. Fu under 28 U.S.C. § 1920. *See* 28 U.S.C. § 1920 (providing that a court may tax as costs "[f]ees of the clerk"); *see also Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) (allowing federal courts to tax as a cost under its discretionary authority). Accordingly, the Court grants Chanel's request for costs in the amount of $400.

### 4. Releasing the Bond

Chanel also asks that the Court release the bond that Chanel posted (in the amount of $40,000) as a condition of the issuance of the temporary/preliminary injunctive relief. Because the Court is now at the final judgment stage, Chanel's request is fair and reasonable. *Cf. Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir. 1994), *cert. denied*, 513 U.S. 822 (1994) (finding that "a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond."). Though *Nintendo* is not entirely on point as it addresses recovery of a bond when a party has been wrongfully enjoined, it may reasonably be inferred that, when a party is lawfully enjoined, then the bond may be released. Thus, the Court orders that the Clerk of the Court release the bond in full to Chanel, including any interest.

### 5. Destruction of Items Seized from Defendant's Property

Finally, Chanel requests permission to destroy all items bearing the Chanel marks that it seized from Ms. Fu on May 4, 2016. Chanel has submitted a declaration confirming that all the

10

items seized on May 4, 2016, were counterfeit and nongenuine. *See* Vafaeisefat Decl. Accordingly, the Court grants Chanel's request for relief and shall permit it to destroy the seized goods.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Chanel's motion for a default judgment is granted.
2. Chanel is awarded $35,640 in attorneys' fees and $400 in costs.
3. The Clerk of the Court shall release the $40,000 bond (including interest) to Chanel.
4. Chanel is permitted to destroy all goods seized from Ms. Fu on May 4, 2016.
5. A permanent injunction is entered with the specific terms as follows.

Defendant and her officers, agents, servants, employees and attorneys', and all persons acting in concert and participation with Defendant are hereby permanently restrained and enjoined from:

(a) Manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Chanel Marks identified in Paragraph 7 of the First Amended Complaint;

(b) Using the Chanel Marks in connection with the sale of unauthorized goods;

(c) Using any logo which may be calculated to falsely advertise the services of products of Defendant offered for sale or sold via any website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with the Plaintiff;

(d) Falsely representing herself or her business as being connected with Plaintiff, through sponsorship or association;

(e) Engaging in any act which is likely to falsely cause members of the trade and/or the purchasing public to believe any goods or services of Defendant offered for sale or sold via any website or business are in any way endorsed by, approved by, and /or associated with Plaintiff;

(f) Using any reproduction, counterfeit, copy, or colorable imitation of the Chanel Marks

11

     in connection with the publicity, promotion, sale or advertising of any goods sold by Defendant via any business, including, without limitation, handbags, wallets, shoes, sunglasses, clothing products, watches, and jewelry;

(g) Affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant via any website or business, as being those of Plaintiff or in any way endorsed by Plaintiff;

(h) Effecting assignments or transfers, forming new entities or associations or utilizing any other device for purpose of circumventing or otherwise avoiding the prohibitions set forth above.

The Clerk of the Court is ordered to enter final judgment in accordance with the above and close the file in this case.

This order disposes of Docket No. 61.

**IT IS SO ORDERED**.

Dated: March 22, 2017

_____
EDWARD M. CHEN
United States District Judge